UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| NATIONAL ROOFING, ) | | |
| INDUSTRY PENSION FUND, ) | | |
| ) | | |
| Plaintiff, ) | | |
| ) | | |
| v. ) | NO. 2:02-CV-127 PS | |
| ) | | |
| W.R. KELSO, INC., and ) | | |
| W.R. KELSO ) | | |
| ) | | |
| Defendants. ) | | |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

Plaintiff National Roofing Industry Pension Funds brought this action against Defendants W.R. Kelso, Inc. ("the Company") and its owner William R. Kelso alleging that both violated ERISA by failing to make contributions to the pension fund. The Company filed bankruptcy and the case against it was stayed. The case proceeded against Kelso individually under two theories: 1) breach of fiduciary duty; and 2) piercing the corporate veil. A bench trial was held before this Court on the claims against Kelso, individually. For the reasons stated below, judgment is in favor of Kelso and against National Roofing Industry Pension Funds ("the Fund").

The following are the Court's findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a). To the extent certain findings of fact may be deemed to be conclusions of law, they shall also be considered the Court's conclusions of law. Similarly, to the extent matters contained in the conclusions of law may be deemed findings of fact, they shall also be considered the Court's factual findings.

**FINDINGS OF FACT**

The Fund brought suit against the Company and Kelso for their alleged failure to make contributions to the Fund pursuant to the Employees Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. (*See*, *generally*, Complaint). The Company is a roofing contractor who employed certain participants in the Fund. The Company was responsible for making contributions to the pension fund for all hours worked by covered employees. Kelso was the chief shareholder of the Company. Counts II and III of the Complaint assert two theories for holding Kelso individually liable for the Company's ERISA obligations. First, in Count II, the Fund asserts that it is entitled to pierce the corporate veil of the Company and thus hold Kelso personally liable to the Fund for the delinquent contributions. Specifically, it alleges:

> Defendant William R. Kelso has failed to observe corporate formalities, has manifested an actual or presumed intent to evade his obligations under ERISA, acting in bad faith and/or engaged in presumptive or actual fraud or is an alter ego, successor or single employer with respect to Defendant W.R. Kelso Co. Inc. and its obligations to the Pension Fund.

(Complaint at ¶ 11.). Second, in Count III, the Fund alleges that Kelso is personally liable for the unpaid contributions as a fiduciary of the funds. Specifically, it alleges:

> Defendant William R. Kelso has decided that other creditors, and not the Pension Fund, should be paid.
>
> By exercising control over Plaintiff Pension Fund's assets, Defendant William R. Kelso has become a fiduciary with respect to those assets (e.g. delinquent contributions, interest and liquidated damages).
>
> As an ERISA fiduciary, Defendant William R. Kelso is personally liable for paying the contributions (plus liquidated damages and interest) back to the Plaintiff Pension Fund.

(Complaint at ¶¶ 12-15).

After the Company filed bankruptcy, the Fund proceeded with its case against Kelso, individually. During the final pretrial conference, in accordance with its customary practice, the Court instructed the parties to exchange proposed findings of fact 20 days prior to trial. The Court further instructed the parties to work together to create an agreed statement of facts for filing with the Court ten days prior to trial. On January14, 2005, Kelso filed his proposed findings of fact. [Doc. 78]. Kelso included the following in his proposed findings of fact:

> 4. At all times herein, Defendant W.R. Kelso . . . has been President and chief stockholder of Kelso Co., Inc. ("Kelso Company").
>
> 5. . . . By the terms of said Trust Agreement, **Kelso Company** agreed to accept, be bound by and comply with the terms of said Trust Agreement establishing the Fund, including, without limitation, the requirement to make monthly contributions to the Pension Fund . . .
>
> 7. **Kelso Company** did not make all of their monthly contributions for the period of April 1999 through March 2003, and did not pay the interest and liquidated damages owed as a result of not paying in accordance with the contracts herein.
>
> 10. All delinquent contributions owed to the Plaintiff Pension Fund are assets of said Fund.
>
> 11. William Kelso had authority and control over the assets and monies of W.R. Kelso Company, Inc. as its President.
>
> 12. . . . . Defendant William Kelso, directed that other creditors, but not the Plaintiff Pension Fund should be paid.

(Def. Proposed Facts at ¶¶ 4-5, 7, 10-12) (emphasis added).

On January 21, 2005, the Fund filed its proposed findings of fact. [Doc. 82]. On that same day, the Fund also filed its "Statement of Agreed Facts and Not Agreed to Facts and Conclusions of Law" (hereinafter "'Agreed' Statement"). [Doc. 81]. In this latter document, the Fund explained that "the instant filing has been prepared after review of Defendant W.R. Kelso's

3

. . . Proposed Findings of Fact and Conclusions of Law with Plaintiffs [sic] own proposals." ("Agreed" Statement at 1, FN 1).  Thus, it is clear that National Roofing did not actually confer with Kelso prior to filing the purportedly "Agreed" Statement.

The matter proceeded to trial on January 31, 2005.  At trial, the Fund made an opening statement and made repeated references to Kelso's proposed findings of fact.  After Kelso made a brief opening statement, the Fund's next move was an odd one. It immediately rested its case without putting on any evidence.  Instead, it merely informed the Court that it was resting based on the admissions submitted by the Defendant in the case.  Notably, however, the Fund did not move to admit the proposed findings of fact into evidence nor did it specifically ask the Court to treat the "Agreed" Statement as stipulations by the parties.

During both the Fund's opening and closing statements, the Court indicated that a copy of the collective bargaining agreement would have been useful to its analysis.  However, the Fund did not submit a copy of any agreement between the Fund and the Kelso Company and/or Kelso, nor did it submit any other documents or testimony into evidence.

After National Roofing rested, Kelso took the stand on his own behalf.  He testified that all the actions that he undertook with respect to the Company he did solely in his role as president of the Company.  He also testified without contradiction that he always adhered to corporate formalities in his operation of Kelso Company. The parties then made brief closing statements and were directed to submit post-trial briefing, and on March 22, 2005 the matter was fully briefed.

## CONCLUSIONS OF LAW

Based on the above Findings of Fact, the Court hereby makes the following conclusions as a matter of law.  An initial matter, we note that the Fund did not present any evidence at trial, instead resting upon the purported admissions in Kelso's proposed findings of fact.  This has left the Court with an unusual evidentiary question.  On one hand, Kelso argues that the statements in his proposed findings are neither party admissions nor are they stipulations.  Further, he asserts that regardless of how the Court chooses to characterize the statements, because the Fund did not formally move to admit them into evidence at the bench trial, the Court cannot consider them in its decision.  The Fund, not surprisingly, takes the opposite positions arguing that the statements in Kelso's proposed findings were admissions that were placed squarely before the Court when Kelso filed them in accordance with the Court's pretrial order.

We are, thus, faced with the question whether a proposed finding of fact by a party is an admission, and if so, can the Court consider such an admission in its trial decision when the admission is filed with the Court during customary pretrial practice, but never properly introduced as evidence at the trial.   The Fund could have easily avoided this dilemma in at least two different ways.  It could have moved to admit the proposed findings of fact into evidence.  It could have also called Kelso himself to the stand and asked him about the admissions in the proposed findings.

As discussed below, we need not resolve these issues because, even if we consider the statements made in Kelso's proposed findings as conclusively proven facts, the Fund has not established that Kelso is a fiduciary so as to impose personal liability.

### A. The Fund Cannot Pierce the Corporate Veil.

In its Complaint, the Fund first asserted that it was entitled to recover from Kelso personally because Kelso acted in such a manner to entitle it to pierce the corporate veil of the Company. However, at trial, the Fund presented no information at all with respect to its piercing the corporate veil claim. It did not argue the piercing the corporate veil theory in its opening statement nor did it make any argument whatsoever with respect to its piercing the corporate veil claim in its Post Trial Brief. In fact, the Fund's counsel specifically disclaimed any reliance on piercing the corporate veil as a theory by which to hold Kelso personally liable. Indeed, in response to the Court's direct question, counsel indicated that he was relying solely on the breach of fiduciary duty theory. Accordingly, we find that National Roofing has abandoned the claim that Kelso should be held personally liable through piercing the corporate veil.

### B. Kelso Was Not a Fiduciary to the Fund.

At trial, the Fund submitted that Kelso is liable for the unpaid assets to the Fund as a fiduciary. We disagree. Under ERISA a person is a fiduciary if he "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(I).[1] ERISA further provides that any plan fiduciary is personally liable for losses to the plan. 29 U.S.C. § 1109(a). The inquiry in this case becomes whether Kelso is a fiduciary of the fund – and is thus personally liable – by virtue of the fact that he chose to pay other obligations of Kelso Company instead of paying the Fund.

---

[1] There are two other ways to be deemed a fiduciary under ERISA neither of which are material to this case. *See* 29 U.S.C. § 1002(21)(a)(ii) and (iii).

To begin with, ERISA does not upset the general rule that individuals are not liable for corporate debt. *Sullivan v. Cox*, 78 F.3d 322, 325 (7th Cir. 1996). While the Seventh Circuit has contemplated the existence of exceptions to this rule, those exceptions are extremely limited. In *Sullivan*, in considering whether an employer was personally liable under a different section of ERISA, the Seventh Circuit specifically held that individual employers are liable under Section 1145 of ERISA for unpaid plan contributions where they specifically accept contractual responsibility for corporate liability. *Id*. However, this exception applies only when the individual defendant himself is a **party to the agreement** before he will have an individual obligation to the fund. *See Plumbers Pension Fund, Local 130 v. Niedrich*, 891 F.2d 1297, 1302 (7th Cir. 1989). In this case, the Court has no idea if Kelso is a party to the agreement because the agreement was never submitted into evidence.

In *Hotel Emp. & Restaurant Emp. Int'l. Union & Welfare Fund v. Billy's 1870*, 2004 WL 1879986 at *2 (N.D. Ill.), the Court examined when and how fiduciary obligations are conferred on employers who fail to make contributions to ERISA funds. The Court first endorsed the view that the contract may provide support to a determination of fiduciary status by "clearly designat[ing] that contributions are plan assets regardless of whether or not they have been paid." *Id*. However, the Court also stated that contractual language classifying unpaid contributions as plan assets, alone, is not enough to confer fiduciary status upon corporate officers. *Id.* As the Court stated, "none of the [applicable caselaw] endorse[s] the idea that the classification of a contribution as a plan asset automatically transforms corporate officers into plan fiduciaries." (citing *ITPE Pension Fund v. Hall*, 334 F.3d 1011, 1015 (11th Cir. 2003)); *Motion Picture Tech. & Film Editors Local 780 Pension Fund v. Astro Color Labs., Inc.*, 2002

7

WL 596364 at *3 (N.D. Ill. April 17, 2002); *Chicago Dist. Council of Carpenters Pension Fund v. Angulo*, 150 F. Supp. 2d 976, 978 (N.D. Ill. 2001).  Instead, a corporate officer does not incur personal liability without a clear indication that he has contractually committed to such an undertaking.  *Billy's*, 2002 WL 1879986 at *2.

Other courts in this circuit agree with this analysis.  In *Angulo*, the court held that even where (1) a contract states that unpaid contributions are plan assets and (2) a corporate officer has directed payment of corporate funds to creditors other than the plan, it is "too big a stretch" to find that the corporate officer is automatically a fiduciary under ERISA.  *Angulo*, 150 F. Supp. 2d at 978.  Yet another court endorsed this view holding that "piercing the corporate veil allegations are also required under the fiduciary duty analysis to hold a corporate officer personally liable."  *Astro Color Labs*, 2002 WL 596364 at *3.

We find the analysis in *Billy's*, *Angulo*, and *Astro Color Labs* effectively capture the intent of the Seventh Circuit's holdings in the *Sullivan* and *Plumbers Pension Fund, Local 130* decisions.  *See also Levit v. Ingersoll Rand Fin. Corp.*, 874 F.2d 1186 (7th Cir. 1989).  Our holding is also in line with that of the majority of circuits that have considered this issue.  *See IPTE Pension Fund v. Hall*, 334 F.3d 1011, 1015 (11th Cir. 2003) (no fiduciary status under ERISA to individual defendant unless individual is "clearly aware" of such status); *Cline v. Indus. Maint. Eng'g & Contracting Co.*, 200 F.3d 1223 (9th Cir.2000) (finding no breach of fiduciary duty under circumstances similar to the case at bar); *Antol v. Eposto*, 100 F.3d 1111 (3rd Cir. 1996) (no individual liability for corporate officers absent evidence to pierce the

corporate veil).[2]

Thus, even if we take the following to be conclusive (and we believe that to be dubious given how the trial transpired): 1) that the delinquent contributions owed to the Fund by the Company are plan assets; 2) that Kelso had authority over those assets as President of the Company; and 3) that Kelso directed that those assets be paid to a different creditor of the Company other than the Fund, it is still not enough to confer fiduciary status on Kelso. The law is clear that Kelso, individually, must have knowingly undertaken a fiduciary duty to the Fund either by showing personal contractual undertaking or by so disregarding the corporate form to allow the Fund to successfully pierce the corporate veil.

As mentioned, the Court has no evidence before it, by admission or otherwise, that Kelso had individually accepted responsibility for unpaid plan assets. First, the Fund did not provide the Court with a copy of any collective bargaining agreement. Had Kelso individually signed that or some other agreement, we would be a long way towards finding fiduciary status. Unfortunately, to this day, the Court has never had the opportunity to consider those documents.

---

[2] The Fund relies on the unpublished case of *Painting Industry Ins. Fund of Local No. 8 v. R. Co., Inc.*, No. 2:99 cv 64 (N.D. Ind. July 3, 2002) wherein Judge Lozano held corporate officers personally liable for unpaid contributions. But the Fund misconstrues that case which involved a failure to remit monies that were deducted from employees' paychecks. The *Painting Industries* case before Judge Lozano was, therefore, similar to *Lopresti v. Terwilliger*, 126 F.3d 34 (2d Cir. 1997) where the Second Circuit held that when an employer deducts funds from an employee's paycheck and fails to remit the money to an ERISA fund, that makes the money "plan assets" as soon as the funds are deducted and this confers fiduciary status on the employer who chooses to pay other bills with the deducted funds. *Id*. at 39-40. This is because 29 C.F.R. § 2510.3-102(a) provides that employee contributions paid to the employer or that are withheld from paychecks are considered plan assets as of the earliest date that they can be reasonably segregated from the employer's assets. There is no evidence in this case that Kelso Company deducted the money at issue here from employees' paychecks. At issue in this case, as best we can tell, are *employer* contributions.

Second, the Fund did not provide any evidence to support a "piercing the corporate veil" type analysis having specifically abandoned that argument. As the Seventh Circuit has stated in a case construing Indiana law: "The burden of proof falls on the party seeking to pierce the corporate veil to establish that the corporate form was so ignored, controlled or manipulated that it was merely the instrumentality of another and that the misuse of the corporate form would constitute a fraud or promote injustice." *Nat'l Soffit & Escutcheons, Inc. v. Superior Sys., Inc.*, 98 F.3d 262, 265 (7th Cir. 1996) (citing *Aronson*, 644 N.E.2d. at 867). We simply have no evidence before us that meets this exacting standard.

Indeed, what little evidence there was on the subject was to the contrary. Kelso specifically testified that corporate formalities were observed. Not surprisingly, the Fund stated the opposite in its own proposed findings. However, the Fund did not present any evidence to support those findings at trial. Accordingly, we cannot accept the Fund's blanket conclusion as our own. *See* Am. Jur. 2d Trial § 1976 ("The test for determining the validity of findings adopted from one party is where findings and conclusions are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, ***and are supported by the evidence***") (emphasis added).

Simply stated, in order to hold Kelso liable as a fiduciary, the fund had to present evidence that Kelso manifested some intent to be personally liable either by explicitly accepting personal responsibility, for example, in the collective bargaining agreement, or by failing to observe corporate formalities. The Fund presented no such evidence. Therefore, we find that Kelso was not a fiduciary to confer individual liability for ERISA violations.

## III.  CONCLUSION

For the reasons explained above, the Court finds that National Roofing Industry Pension Funds cannot obtain personal judgment against William R. Kelso.  The clerk shall **ENTER FINAL JUDGMENT** in favor of William R. Kelso.  The clerk shall treat this civil action as **TERMINATED** as to William R. Kelso.

**SO ORDERED**.

ENTERED: June 6, 2005

                                             s/ Philip P. Simon
                                            PHILIP P. SIMON, JUDGE
                                            UNITED STATES DISTRICT COURT